## BERRY et ux. v. MEREDITH.

### No. 3854.

Court of Civil Appeals of Texas. Texarkana.
May 15, 1930.

Rehearing Denied June 5, 1930.

Bozeman & Cathey, of Quitman, and E. A. Tharp, of Mineola, for appellants.

Jones & Jones, of Mineola, for appellee.

HODGES, J.

This suit was filed by the appellee, Meredith, against H. E. Berry and wife in the form of an action of trespass to try title to recover a lot situated in the city of Mineola, Wood county. After answering generally, appellants pleaded specially that the property sued for was their homestead and had been for many years; that a deed executed by them under which the appellee claimed title, though absolute in form, was given as a mortgage to secure the payment of a debt, and that it was therefore void. They further alleged that the appellee had notice of that fact before he purchased the property. It was agreed on the trial that Berry and wife were the original owners of the property. The evidence shows that on October 18, 1926, they executed a deed absolute in form conveying the property to Charles Broadway Rouss, Inc., of New York City. The consideration stated in the deed was $3,000 paid in cash by Charles Broadway Rouss, Inc. The deed contains the usual clauses of general warranty, was acknowledged in due form, and properly recorded in the deed records of Wood county. It is conceded that the appellee has a good title to the property and is entitled to recover in this suit if that deed was intended as an absolute conveyance of the property, and not as a mortgage to secure a debt.

Berry testified, in substance, that in 1926, a short time prior to the execution of the deed, he desired to go into the mercantile business in Mineola, and, being without funds, wrote to Charles Broadway Rouss, Inc., of New York City, about selling him a stock of goods. As a result of the correspondence between him and that company he made the deed above referred to. He stated that his purpose in executing the deed was to give security for a $3,000 line of credit which Charles Broadway Rouss, Inc., agreed to extend. He was unable to produce the original letter asking for the credit, and did not have a copy. He received from that company, in reply to his letter, the following telegram: "Will extend three thousand dollar credit against deed to me of your property charging no rent Accompany deed with county clerk statement, no liens or encumbrances, and opinion lawyer or banker; it is reasonable security. Will increase credit if account justifies." That telegram was later embraced in a letter, which concluded as follows: "We trust you will find it convenient to comply with the above and we await your valued order which will be promptly shipped."

Berry further testified that after receiving that telegram he and his wife executed the deed to Charles Broadway Rouss, Inc., in the form as before stated and sent it to Charles Broadway Rouss, Inc., at New York City. He then sent his orders for merchandise and received about $2,700 worth of goods. He stated: "The merchandise came and I opened a store there. I went on with the business of running the store. Nothing further passed between me and this company with reference to the making of this deed. There was no other kind of understanding about it more than it was not an outright sale. I made the deed as they requested. It was security for the line of credit that they were furnishing me. It wasn't a sale of this property by my wife and me. It was nothing more than just a lien on that for this line of credit. It wasn't a sale by my wife and myself. I was a married man."

He further stated that he and his wife were occupying the place as their homestead at the time this transaction occurred. He valued the property at about $3,000. He had paid Charles Broadway Rouss, Inc., at the time of the trial, $190. There was some dispute as to whether that amount was paid as rents for the house or on a debt for the goods. Mrs. Berry testified, in substance, as did Berry, that the property was their homestead, and that it was her understanding and intention at the time she executed the deed that it was to be only a mortgage to secure a line of credit which her husband desired, in order to enable him to go into the mercantile business. There is no other evidence in the record of any understanding or agreement between Charles Broadway Rouss, Inc., and the appellants in this suit. According to the testimony of Berry no one was present at the time the deed was executed to represent Charles Broadway Rouss, Inc.,

and there was no understanding entered into at that time as to whether or not the deed should be considered as a mortgage or as an absolute conveyance. There is no evidence of what Charles Broadway Rouss, Inc., understood as to the character of the transaction, except what may be inferred from the correspondence previously quoted.

During the progress of the trial counsel for the appellee introduced in evidence the following letter written by Berry on April 29, 1927, to some Dallas attorneys who represented Charles Broadway Rouss, Inc.:

"In reply to yours of the 28th inst. regarding Charles Broadway Rouss account, will say I gave them a warranty deed to our home for $3,000.00 worth of merchandise. They lacked a little over $200.00 shipping all. They requested a deed. I gave it to them. They had it recorded at Quitman. They also have the property listed for sale, which is all right with me. It is theirs, and they can do what they please with the property. The goods are mine. So I am not going to trade back. If a person buys a piece of property and gets a deed to it I think it is his. I am yours truly, H. E. Berry.

"P. S. The real estate man here has the deed they sent him in case he found a sale for the property."

J. D. Dowell, who was engaged in the real estate business at Mineola, testified for the appellee, in substance, as follows: That he went with W. T. Henry of Dallas to see Berry about renting the house; that something was said about Berry renting the house. They finally agreed that Berry was to pay them $20 a month as rent. There was some back rent due. He said: "The consideration specified in the deed was $3000.00, and I believe they delivered him $2750.00 worth of goods and he was to get some more goods, and the rent went in on that, and he started paying rent to me the first of 1928 and paid me four months at $20.00 a month. * * * It seems like he contended he had not received about $250.00 worth that he should have received. We discussed the settlement of the difference between what Berry claimed they should have shipped and what they did actually ship. My understanding was that Berry should take the balance out of the rent—that it out in rents. He had been living in the house for some time. He paid me four months' rent at $20.00 a month. That $20.00 a month was for rents. There was nothing said about it going to his credit on the mercantile account. * * * There was nothing said in that conversation by Mr. Berry about that being a mortgage on that property. There was nothing said in that conversation that he was claiming the property."

The court submitted to the jury the issue as to whether the deed executed by Berry and wife to Charles Broadway Rouss, Inc., was intended as an absolute conveyance or only as a mortgage. In answer to the question the jury found that it was intended as an absolute conveyance. On that finding the court rendered a judgment in favor of the appellee for the title and possession of the property. It is insisted in this appeal that the evidence is insufficient to support that finding. While there are some intimations in the message received from Charles Broadway Rouss, Inc., that it expected and was willing to take a mortgage on real estate as security for the value of the goods to be sold to Berry, when the entire evidence is considered an issue is presented as to whether the deed was executed and accepted as a conveyance or merely as a mortgage. Upon its face the deed purports to be an absolute conveyance, and the burden rested on the appellants to prove that it was not. Berry and his wife, both of whom were interested witnesses, testified that it was not their intention to convey their homestead. But a conveyance is the legal effect of their deed unless there was a contrary understanding with the grantee at the time the deed was executed and delivered. No representative of Charles Broadway Rouss, Inc., was present at the time the deed was prepared and signed, and there is no evidence of what kind of a letter was written by Berry when he transmitted the deed to the grantee in New York. If the deed was sent without any explanation stating that it was intended only as a mortgage, the natural inference would be that it was accepted for what it purported to be, a conveyance of the property.

The letter written by Berry to the Dallas attorneys was, we think, properly admitted. Berry had testified that the deed was intended as a mortgage and not as a sale. The letter plainly contradicted that statement. It was admissible for the purpose of impeaching Berry. The proof shows that Berry conducted the entire transaction with Charles Broadway Rouss, Inc. Whatever contract the parties made, Berry represented himself and wife in fixing the terms. Whatever may have been Mrs. Berry's secret intentions at the time she signed the deed, she was bound by her acknowledgment that she executed the instrument for the purposes and consideration therein stated. When the deed was received in New York the grantee had a right to assume that her acknowledgment correctly stated her intentions.

We think the evidence was sufficient to support the finding of the jury, and the judgment will therefore be affirmed.